# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

IN RE:
CLAUD ANDERSON

---

CLAUD ANDERSON,

     Appellant,

     v.

THE HARBOR BANK OF MARYLAND,

     Appellee.

Civil Action No. TDC-18-0977

## MEMORANDUM OPINION

Appellant Claud Anderson has appealed an Order of the United States Bankruptcy Court for the District of Maryland ("the bankruptcy court") finding his debt to Appellee The Harbor Bank of Maryland ("Harbor Bank") nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(6). The Appeal is fully briefed and ripe for disposition. No hearing is necessary to resolve the issues. *See* D. Md. Local R. 105.6. For the reasons set forth below, the bankruptcy court's dischargeability determination is AFFIRMED.

## BACKGROUND

### I.    The 2008 Agreements

In 2006, Waterland Fisheries, Inc. ("Waterland"), a commercial fish farm, was incorporated in Michigan. Waterland was dissolved in 2016. At all times during that 10-year period, Claud Anderson ("Anderson") was Waterland's President and Chairman of the Board of Directors. In April 2007, Waterland purchased property located at 299 Nealson Street in Hurlock,

Maryland ("the Property"). In June 2008, Harbor Bank extended a $750,000 commercial construction loan to Waterland. As security for that transaction, Waterland granted Harbor Bank a lien on the Property, memorialized in a Deed of Trust ("Harbor Bank Deed"), the scope of which included the land and the improvements to land. The Harbor Bank Deed required the maintenance of an insurance policy on the Property and provided that any insurance proceeds must be paid directly to Harbor Bank. The Harbor Bank Deed was recorded in the relevant county land records in July 2008.

As part of the 2008 loan, Waterland also entered into a Security Agreement with Harbor Bank (the "Harbor Bank Security Agreement") in which it gave Harbor Bank a secured interest in certain business property ("the Collateral"), including Waterland's deposit accounts, and in the "Proceeds and Products," defined as "the proceeds, including but not limited to insurance proceeds, and all the products of" the Collateral. The Harbor Bank Security Agreement also required that Harbor Bank's security interest take priority over any other security interest, with the exception of any prior security interest held by Harbor Bank through another loan. Also as part of the loan transaction, Claud Anderson executed a Guaranty Agreement in which he personally guaranteed the Harbor Bank loan through a lien on his personal property.

Harbor Bank's secured interest in the business property was memorialized in a Uniform Commercial Code ("UCC") Financing Statement ("Harbor Bank Financing Statement"), which was recorded in the county land records in July 2008. In January 2009, a copy of the Financing Statement bearing the land records recordation stamp was filed with the Michigan Secretary of State.

Because the Property was encumbered by additional loans beyond the Harbor Bank loan, a Subordination and Intercreditor Agreement ("Intercreditor Agreement") was also recorded at the

same time that the Harbor Bank Deed was recorded. The Intercreditor Agreement subordinated other non-Harbor Bank outstanding loans on the Property to Harbor Bank's interest. The Intercreditor Agreement was signed by Claud Anderson on behalf of Waterland, by Harbor Bank, and by a number of Waterland's other secured creditors.

Also in 2008, Waterland obtained a casualty, commercial liability, and property damage insurance policy ("the Policy"), policy number S1586046, from Selective Insurance Company of America ("Selective") for the Property. In February 2010, a storm caused damage to the Property. Waterland submitted a claim for that damage under the Policy in May 2010, but the claim was denied. In December 2012, the Property was again damaged by weather, and Waterland again submitted a claim under the Policy—Claim 21274371—which was also denied.

## II.    The Joann Anderson Loan

In January 2013, Joann Anderson, Claud Anderson's wife, loaned $510,000 to Waterland. Joann Anderson was Waterland's Secretary and Treasurer, and she performed voluntary administrative duties for Waterland, such as paying Waterland's bills and making deposits into bank accounts. Pursuant to the loan, Waterland and Joann Anderson entered into a Security Agreement (the "Anderson Security Agreement"), executed on January 16, 2013, that granted Joann Anderson "a continuing security interest in, and lien upon, all of Debtor's right, title and interest in, to, and arising under the Collateral," which was defined as all of Waterland's "personal property and fixtures, tangible and intangible, real, personal and mixed, whether now in existence or whether acquired or created at any time hereafter," including Waterland's "deposit accounts." Anderson Security Agreement ¶¶ 1-2, ECF No. 15-2. On January 30, 2013, Joann Anderson filed a UCC Financing Statement with the Michigan Secretary of State which defined the collateral in

which she had a secured interest in the same terms as the collateral described in the Anderson Security Agreement.

At no point did Waterland request Harbor Bank's consent for, or did Harbor Bank give its consent to, Joann Anderson's lien against Waterland's assets, and Harbor Bank did not learn of Joann Anderson's lien until late May or early June 2015. According to Harbor Bank, Joann Anderson's lien constituted a default on the Harbor Bank loan.

In February 2013, Joann Anderson corresponded with Stanley Arnold, a commercial loan officer with Harbor Bank, about consolidating the several loans Waterland had with Harbor Bank. In a February 4, 2013 email to Arnold with the subject line, "Waterland Non-Bank Loans," Joann Anderson listed for Arnold Waterland's outstanding non-Harbor Bank loans subordinated to Harbor Banks interests, but did not reference her $510,000 loan, made the previous month. At trial in the bankruptcy court, Joann Anderson provided no explanation for why she neglected to include her $510,000 loan in the list of Waterland's non-bank loans that she emailed to Arnold, but instead generally asserted that Harbor Bank was aware of her security interest.

### III.    The 2013 Agreements

On July 25, 2013, Waterland consolidated its Harbor Bank loans into a single loan in the amount of $1,049,365.45. The consolidated promissory note incorporated all of the 2008 agreements between Waterland and Harbor Bank. As part of the consolidation, Waterland signed a Consolidated, Amended and Restated Deed of Trust, Assignment of Rents and Leases, and Security Agreement ("the Amended Harbor Bank Deed"), which reaffirmed Harbor Bank's previously recorded security interests in the Property and consolidated them into a single lien. The Amended Harbor Bank Deed expressly provided that the lien extended to "[a]ll payments, proceeds, settlements of other compensation heretofore or hereafter made, including any interest

thereon, and the right to receive the same from any and all insurance policies covering the Land or the Improvements now or hereafter erected thereon." Amended Harbor Bank Deed at 6, § (k), Trial Ex. 8. The Amended Harbor Bank Deed was recorded in the county land records in August 2013.

Waterland then entered into a Consolidated, Amended and Restated Security Agreement ("Amended Harbor Bank Security Agreement"), which continued Harbor Bank's security interest in, among other things, "all cash and non-cash proceeds" from any insurance claim made in relation to Waterland's Collateral. Amended Harbor Bank Security Agreement ¶ 2, Trial Ex. 10. Elsewhere in the Amended Harbor Bank Security Agreement, Waterland expressly assigned to Harbor Bank the proceeds of any such insurance claim and "directs any insurer to make payments directly to [Harbor Bank]." *Id.* ¶ 3(G). The Amended Harbor Bank Security Agreement again defined the scope of the Collateral in which Harbor Bank had an interest to include, in relevant part, all of Waterland's deposit accounts.

As part of the consolidation, Claud Anderson entered into a Consolidated, Amended and Restated Guaranty ("Amended Harbor Bank Guaranty") in which he unconditionally affirmed his obligations under all of the previous loan documents, including those entered into in June 2008.

On July 26, 2013, Waterland obtained a $350,000 loan from the Maryland Small Business Development Financing Authority ("MSBDFA") through the Maryland Department of Commerce ("the MSBDFA loan"). Because of Waterland's financial condition, MSBDFA required Waterland to execute an Assignment of Insurance Proceeds ("Insurance Assignment") as a necessary condition of the loan. The Insurance Assignment assigned to MSBDFA "any and all insurance proceeds … that may be payable to the Borrower under insurance policy number S1586046 … issued by Selective Insurance Company …, and resulting from the prior loss of or

5

damage to the inventory, building and equipment" of Waterland located at the Property. Assignment Ins. Proceeds ¶ B, Appellant Brief Ex. C, ECF No. 15-3.

MSBDFA was aware of Joann Anderson's loan to Waterland, as evidenced by a July 26, 2013 Subordination and Intercreditor Agreement ("Anderson Subordination Agreement") in which Joann Anderson agreed to subordinate all of her security interests in Waterland's collateral to MSBDFA. In particular, the Anderson Subordination Agreement required that "so long as any of" MSBDFA's security interests in Waterland were entitled to priority over those of Joann Anderson, Joann Anderson agreed not to take any action "to foreclose or enforce any liens on or security interests in" Waterland's assets without MSBDFA's prior written consent. Anderson Subordination Agreement ¶ 4, Appellant Brief Ex. E, ECF No. 15-5. Because of Waterland's financial circumstances, the Anderson Subordination Agreement was a condition of the MSBDFA loan.

Also on July 26, 2013, Waterland executed an Amended and Restated Subordination and Intercreditor Agreement ("Amended Intercreditor Agreement"), which gave Harbor Bank's lien priority over three other liens, including the MSBDFA lien pursuant to the MSBDFA loan, as to Waterland's real property and as to liens on insurance proceeds under claim 21274371. Specifically, the Amended Intercreditor Agreement gave unqualified first priority to Harbor Bank as to all of Waterland's real property and gave Harbor Bank third priority as to Waterland's personal property with the notable exception of "the Insurance Proceeds, with respect to which its lien and security interest shall have a first priority." Am. Intercreditor Agreement ¶ 4, Trial. Ex. 14. The Amended Intercreditor Agreement makes no mention of Joann Anderson's loan.

Prior to closing on the July 2013 loan, Arnold checked to see what UCC financing statements were on file for Waterland. In that process, he did not discover Joann Anderson's UCC financing statement.

On August 1, 2013, Waterland opened a business checking account with United Bank ("the United Bank account"). Claud Anderson and Joann Anderson were each listed as authorized signatories on the account. The account agreement did not list Joann Anderson as a Waterland secured creditor, and Joann Anderson did not have a bank account control agreement for the United Bank account.

## IV.    The Selective Suit

In February 2014, Waterland filed suit against Selective ("the Selective Suit") in the United States District Court for the District of Maryland for the denied 2010 and 2012 insurance claims. *See Waterland Fisheries, Inc. v. Selective Ins. Co. of Am.*, No. 14-cv-0585-RDB (D. Md. 2014). The parties agreed to mediate the matter. In May 2014, United States Magistrate Judge Jillyn K. Schulze issued an Order scheduling mediation in August 2014. That Order stated that the "settlement conference process will be confidential and disclosure of confidential dispute resolution communications is prohibited." Order at 2, *Waterland*, No. 14-cv-0585 (D. Md. May 13, 2014) (ECF No. 10). Although scheduled for mediation with Magistrate Judge Schulze, the parties ultimately opted to pursue private mediation, which occurred before a retired Maryland state court judge on July 18, 2014.

In the meantime, prior to the mediation, Claud Anderson was providing updates to Stanley Arnold at Harbor Bank approximately every other month in which he gave assurances that Waterland would use the proceeds from the Selective Suit to pay off the Harbor Bank loan. Specifically, in June 2014, Claud Anderson sent a memorandum to Harbor Bank and other

creditors apprising them that the Selective Suit was scheduled for mediation, that Waterland was claiming $3 million in damages, and that he hoped a settlement would be large enough to pay back all of Waterland's secured creditors. The memorandum made no mention of Joann Anderson's loan. On July 3, 2014, less than two weeks before the mediation, Claud Anderson emailed two Harbor Bank representatives, including Arnold, informing them of the scheduled mediation and stating that "[w]e have every reason to believe that [Waterland] will receive sufficient funds from Selective to pay off our secured creditors. We are still requesting forbearance from Harbor through this scheduled mediation." C. Anderson 7/3/14 Email, Trial Ex. 21. Again, the email made no mention of Joann Anderson's secured interest in Waterland.

The July 18, 2014 mediation, which both Claud and Joann Anderson attended, resulted in a settlement under which Selective agreed to pay Waterland a total of $800,000 for the 2010 and 2012 claims. The settlement agreement was entered into by the parties on July 25, 2014.

On July 30, 2014, Arnold emailed Claud Anderson asking him for an update on the Selective Suit. Claud Anderson did not mention the settlement and instead responded, "We are currently discussing the selling of the business to a couple of potential buyers." In emails dated August 5, 2014 and August 12, 2014 to Arnold, Claud Anderson continued to reference efforts to sell the business. In the August 12 email, he assured Arnold that by the end of the following week, he would present Harbor with a plan to pay Waterland's debts. In none of these communications did Claud Anderson mention the Selective Suit settlement. In the bankruptcy proceedings, Claud Anderson testified that he believed that he was forbidden by Magistrate Judge Schulze's May 2014 Order from disclosing to any of his creditors that a settlement had been reached or disclosing the terms of that settlement.

8

## V.    The Insurance Proceeds

Selective's check for $800,000 was issued on July 29, 2014 and mailed to Waterland's attorneys in the Selective Suit, Kramon & Graham, P.A. ("Kramon & Graham").  That same day, Joann Anderson emailed Kramon & Graham and asked them to wire the funds to the United Bank account and to inform her as soon as the money had been wired.  On August 11, 2014, Claud Anderson signed a Kramon & Graham Settlement Memorandum ("Settlement Memorandum"), which stated that $332,884.20 had been deducted from the settlement for attorney's fees and expenses.  The Settlement Memorandum also stated that the remaining $467,115.80 would be wired to Waterland's United Bank account, "per client's instructions."  Settlement Mem., ECF No. 15-6.  When he signed the Settlement Memorandum, Claud Anderson was aware that the funds were being sent to the United Bank account, not to any of Waterland's secured creditors.  His concern at that point was "get[ting] the monies into the Waterland accounts," and Waterland's obligations to Harbor Bank were "secondary."  3/20/17 Trial Tr. at 86 (Claud Anderson Testimony), ECF No. 4-5.  The wire transfer of $459,615.80 to the United Bank account was executed on August 15, 2014.

Having been in attendance at the settlement conference, Joann Anderson was aware that the Selective Suit settlement was not going to yield enough funds to cover all of Waterland's bills, and she discussed that fact with Claud Anderson.  On August 15, 2014, she wrote and signed on behalf of Waterland a United Bank account check payable to herself in the amount of $439,000 ("the Anderson Transfer").  The memo for the check states, "Repay Secured loan; bal owed $71,000."  Anderson Transfer Check, Trial Ex. 31.  At that time, Waterland was not in default on its payments to her, and she had not made a demand for payment.  According to Joann Anderson, she believed that as the only secured creditor with access to and control of the United Bank

account, she had a priority security interest in the proceeds of the Selective Suit settlement and was therefore entitled to receive immediate and full payment of her outstanding loan balance. She also claimed that her control over the United Bank account rendered her interest in that account exempt from the Anderson Subordination Agreement. Joann Anderson reached these conclusions based on advice from corporate restructuring consultants hired by Claud Anderson on behalf of Waterland. She testified that although she did not consult Claud Anderson about the Anderson Transfer, she informed him of it either just before or just after she effected it.

Around August 22, 2014, Claud Anderson met with Arnold to discuss the Harbor Bank loan. During that meeting, he again did not inform Arnold of the Selective Suit settlement. Waterland did not inform Harbor Bank of the settlement until December 2014 and even then did not provide any information about the settlement terms. Harbor Bank learned of the terms of the settlement only after subpoenaing records from Selective in January 2015. At no point during this time was Harbor Bank aware that the settlement proceeds had been transferred to Joann Anderson.

In a June 19, 2015 letter, Waterland informed its creditors, including both Harbor Bank and Joann Anderson, that it was surrendering to its creditors all of the collateral securing its various loans, on the condition that the collateral was disposed of in a commercially reasonable fashion. In detailing the collateral available for disposition, the letter reiterated the priority of interests codified in the Amended Intercreditor Agreement but stated that only Joann Anderson had a security interest in the United Bank account, into which the Selective Suit proceeds had been deposited. In support of this assertion, the letter appears to offer a quotation from an uncited authority stating that under various provisions of the Uniform Commercial Code, a UCC financing statement does not perfect a security interest in a deposit account, that such a security interest can be perfected only by control, and that "a secured party has control of a deposit account if ... the

secured party is the bank with which the deposit account is maintained." C. Anderson Letter at 3, Trial Ex. 26.

Asserting that the United Bank account was not controlled by any creditor other than Joann Anderson, and that Joann Anderson had "exercised her possessory lien as senior secured creditor" as to the account, Claud Anderson informed the creditors that Joann Anderson had "seized all insurance action proceeds," which amounted to about half of the $800,000 settlement. *Id.* at 4. It was through this letter that Harbor Bank first learned that Joann Anderson had seized all of the insurance proceeds.

The letter further stated that Joann Anderson had advanced Waterland $150,000 of those proceeds to help it sustain its operations. In the bankruptcy action, neither Claud Anderson nor Joann Anderson were able to produce bank records substantiating this $150,000 loan.

## VI. The Bankruptcy Proceedings

The following week, on June 22, 2015, Claud Anderson filed a Chapter 7 bankruptcy petition. *In re Anderson*, No. 15-18781 (Bankr. Md. 2015). He listed Waterland's Harbor Bank loan on his Petition as an unsecured nonpriority claim in the amount of $1,050,000. Pet. at 16, *In re Anderson*, No. 15-18781 (Dkt. No. 1).

On January 2, 2016, Harbor Bank filed an adversary proceeding stemming from Claud Anderson's bankruptcy petition. *Harbor Bank of Maryland v. Anderson*, No. 16-00002 (Bankr. Md. 2016). That proceeding was later consolidated with an adversary proceeding filed by other Waterland creditors. *See* Consolidation Order, *State of Maryland. v. Anderson*, No. 15-00685 (Dkt. No. 24). In January 2017, Harbor Bank amended its Complaint. The Amended Complaint states four causes of action, each asserting a different theory under which Anderson could not discharge the Waterland debt to Harbor Bank in bankruptcy. The first was an objection to

discharge pursuant to 11 U.S.C. § 727(a)(2)(A), which provides that a debt shall not be discharged in bankruptcy if the debtor, "with intent to hinder, delay, or defraud a creditor ... has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the debtor, within one year before the date of the filing of the petition." The second was an objection pursuant to 11 U.S.C. § 523(a)(4), which provides that bankruptcy does not discharge a debt incurred as the result of "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The third was a claim pursuant to 11 U.S.C. § 523(a)(6), which provides that bankruptcy does not discharge a debt incurred as the result of "willful and malicious injury by the debtor to another entity or to the property of another entity." Lastly, the fourth claim invoked 11 U.S.C. § 523(a)(2)(A), which provides that bankruptcy does not discharge a debt incurred when the "money, property, services, or an extension, renewal, or refinancing of credit" is obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

The consolidated adversarial proceedings went to trial before the bankruptcy court in March 2017. In March 2018, the bankruptcy court issued an Opinion and Order finding Claud Anderson's debt to Harbor Bank nondischargeable under § 523(a)(6) and entered judgment for Harbor Bank on that claim. *See* Order, *State of Maryland v. Anderson*, No. 15-00685 (Dkt. No. 189). The bankruptcy court entered judgment in favor of Anderson on Harbor Bank's three other causes of action.

In assessing Harbor Bank's § 523(a)(6) claim, the bankruptcy court first defined the statute's "willful and malicious injury" requirement. The bankruptcy court noted that under *Kawaauhau v. Geiger*, 523 U.S. 57 (2014), nondischargeability under § 523(a)(6) requires "a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Id.*

at 61. Accordingly, it concluded that an injury is willful and malicious for purposes of § 523(a)(6) when "the debtor acted with 'substantial certainty that harm would result or a subjective motive to cause harm.'" *In re Parks*, 91 F. App'x 817, 819 (4th Cir. 2003) (unpublished) (quoting *In re Miller*, 156 F.3d 598, 604 (5th Cir. 1998)).

Because the *Geiger* framework sounds in tort, the bankruptcy court examined its applicability when the alleged injury was a breach of contract and concluded that the breach must be accompanied by "some conduct that is legally wrong or tort[i]ous" in order to support a § 523(a)(6) claim. Bankr. Mem. Op. at 37 (citing *Webb v. Isaacson (In re Isaacson)*, 478 B.R. 763, 781 (Bankr. E.D. Va. 2012)). The bankruptcy court noted that other courts have found that deliberately and intentionally refusing to turn over funds that the debtor had specifically agreed to earmark for payment of a particular debt amounted to independently wrong or tortious conduct" so as to satisfy § 523(a)(6)'s "willful and malicious injury" requirement. *Id.* at 38. *See, e.g., Alessi v. Alessi (In re Alessi)*, 405 B.R. 65, 68 (Bankr. W.D.N.Y. 2009).

With this legal framework, the bankruptcy court turned to the facts of the case. The bankruptcy court found first that Harbor Bank had been injured by the Anderson Transfer because it, not Joann Anderson, had a priority security interest in the Selective Suit proceeds. In so concluding, the bankruptcy court rejected Claud Anderson's claim that Joann Anderson's control of the United Bank account made her a first priority secured creditor for purposes of the Selective Suit settlement funds. Bankr. Mem. Op. at 39. The bankruptcy court found that where Joann Anderson had no deposit account control agreement with Waterland as to the United Bank account, her access to that account was only in her capacity as Waterland's Secretary and Treasurer, not as a secured creditor. It also ruled that Joann Anderson, in her capacity as a secured creditor, had no

claim to priority by virtue of the Anderson Subordination Agreement, which subordinated all of her interests in Waterland to MSBDFA.

Instead, the bankruptcy court found that Harbor Bank had a first-priority claim to the Selective Suit insurance proceeds by virtue of the Insurance Assignment, which expressly assigned Waterland's interest in the Selective Suit proceeds to MSBDFA, and the Amended Intercreditor Agreement, which then gave Harbor Bank a first-priority interest in those insurance proceeds. The bankruptcy court further concluded that the insurance proceeds had not been converted into another form of capital, and thereby no longer governed by the Insurance Assignment and Amended Intercreditor Agreement, simply by being deposited in the United Bank account. The bankruptcy court thus found that Harbor Bank, as the first-priority interest holder in the Selective Suit proceeds, had been injured by the Anderson Transfer.

As for whether the injury was willful and malicious, the bankruptcy court found that the preponderance of the evidence established that Claud Anderson's intent was to put the Selective Suit proceeds "outside of Harbor Bank's reach in order to give Joann Anderson access to the funds." Bankr. Mem. Op. at 40. In reaching this conclusion, the bankruptcy court relied on Claud Anderson's testimony that in signing the Settlement Memorandum, he instructed his attorneys to transfer the settlement proceeds to Waterland's United Bank account, not Harbor Bank, because his goal was to get the money to Waterland, and he considered Harbor Bank's right to the money to be secondary. The bankruptcy court found that Claud Anderson knew that Joann Anderson claimed a superior interest to the funds in that account based on the advice of restructuring experts and rejected the testimony that Joann Anderson made the Anderson Transfer without consulting Claud Anderson, because the court did "not believe that the Defendant and Joann Anderson, who have been married for more than 50 years and worked together at Waterland at the time, did not

discuss Joann Anderson's intentions to take the Insurance Proceeds." *Id.* The bankruptcy court further noted that at the very latest, Claud Anderson learned from Joann Anderson of the Anderson Transfer soon after she had effected it, and yet he took no action to undo the transfer. Instead, he actively concealed it. Although Claud Anderson communicated with Stanley Arnold of Harbor Bank both before and after the Anderson Transfer, at neither point did he tell Arnold that the Selective Suit had settled. The bankruptcy court rejected as "stretch[ing] credulity" Claud Anderson's explanation of his silence as required by settlement confidentiality requirements. *Id.* at 41. Based on these factual findings, the bankruptcy court concluded that Claud Anderson willfully and maliciously caused injury to Harbor Bank by depriving it of the insurance proceeds.

Accordingly, the bankruptcy court concluded that Claud Anderson's debt to Harbor Bank as guarantor for Waterland was not dischargeable in bankruptcy because it was the result of "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Anderson has now appealed that determination to this Court.

## DISCUSSION

On appeal, Anderson argues that the bankruptcy court erred in finding that he willfully and maliciously caused injury to Harbor Bank because once the Selective Suit proceeds were deposited into the United Bank account, Harbor Bank lost any secured interest in them, and Joann Anderson became the first-priority lien holder over those proceeds due to her control over the United Bank account. Anderson also argues that the bankruptcy court erred in determining that any injury to Harbor Bank was willful and malicious, and that Harbor Bank's claims are barred by the doctrine of *res judicata*.

## I.     Standard of Review

The Court has jurisdiction over the Appeal because the bankruptcy court's order resolving Anderson's Motion to Dismiss and finding the Waterland debt to Harbor Bank nondischargeable is a final order. 28 U.S.C. § 158(a)(1) (2012); *see Gold v. Guberman (In re Computer Learning Ctrs., Inc.)*, 407 F.3d 656, 660 (4th Cir. 2005) (stating that "orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case") (quoting *In re Saco Local Dev. Corp.*, 711 F.2d 441, 444 (1st Cir. 1983)). A district court reviews the bankruptcy court's legal conclusions *de novo* and its findings of fact for clear error. *Canal Corp. v. Finnman (In re Johnson)*, 960 F.2d 396, 399 (4th Cir. 1992). The district court reverses a bankruptcy court order only when it "has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (quoting *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 506 (4th Cir. 1977)); *Yankah v. Yankah (In re Yankah)*, 514 B.R. 159, 164 (E.D. Va. 2014).

## II.    Injury

Anderson's core assertion on this appeal is that "whatever character the insurance proceeds had prior" to being deposited into the United Bank account, once there, "any lien held by Harbor or another creditor became subordinate" to the lien held by Joann Anderson. Appellant Brief at 19, ECF No. 15. Anderson is thus primarily challenging the bankruptcy court's conclusion that Harbor Bank was injured by the Anderson Transfer, based on his contention that Harbor Bank had no entitlement to the proceeds of the Selective Suit. Anderson's authority for this proposition is UCC § 9-104, codified in Maryland, which states:

(a) A secured party has control of a deposit account if:

(1) The secured party is the bank with which the deposit account is maintained;

(2) The debtor, secured party, and bank have agreed in an authenticated record that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the debtor; or

(3) The secured party becomes the bank's customer with respect to the deposit account.

(b) A secured party that has satisfied subsection (a) has control, even if the debtor retains the right to direct the disposition of funds from the deposit account.

Md. Code Ann., Com. Law § 9-104 (West 2013). Here, the bankruptcy court found that Joann Anderson did not have "control" of the United Bank deposit account within the meaning of section 9-104 based on the absence of any account control agreement between Joann Anderson, Waterland, and United Bank. Nor was the bankruptcy court persuaded that Joann Anderson's access to the United Bank account as an authorized signatory amounted to "control" of that account within the meaning of section 9-104, rejecting such a conclusion as a "red herring." Bankr. Mem Op. at 39. To the extent that the bankruptcy court's conclusion rests on certain findings of fact, the Court sees no clear error in such findings.

Considering that factual universe and conducting a *de novo* legal review, the Court reaches the same conclusion as the bankruptcy court. Anderson identifies no specific provision of section 9-104 that he believes to apply to the facts here. The only one that seems possibly relevant is section 9-104(a)(3), which states that a secured party has control of a deposit account if the party becomes the bank's customer with respect to that account. However, the record establishes only that Joann Anderson was an authorized signatory on the United Bank account, and Anderson provides no authority for the claim that an authorized signatory is equivalent to a customer for purposes of this provision. Rather, the commentary to section 9-104 compels the contrary conclusion, as it states that, pursuant to section 8.12 of the Restatement of Agency, determining whether a particular person has control requires application of traditional agency principles.

Section 8.12 of the Restatement of Agency, in turn, emphasizes that an agent has a duty "not to deal with the principal's property so that it appears to be the agent's property," and that an agent's control of the property of the principal is tantamount to control by the principal. Restatement (Third) of Agency § 8.12 (Am. Law. Inst. 2006). Thus, when Joann Anderson acted with regard to the United Bank account, she did so solely in her capacity as an authorized signatory and employee of Waterland, not in her role as one of Waterland's secured creditors.

Anderson's citation to *In re WEB2B Payment Solutions, Inc.*, 488 B.R. 387 (8th Cir. B.A.P. 2013), does not provide a basis to alter this conclusion. That case establishes only that when a party transfers a debtor's funds to another entity without requesting adequate protection of its possessory lien, it relinquishes that lien. *In re WEB2B Payment Solutions*, 488 B.R. at 394. Here, Harbor Bank never had actual possession of the Selective Suit proceeds, as it was Waterland's attorneys, at the direction of Claud Anderson, who transferred the funds into the United Bank account. The *In re WEB2B Payment Solutions* court's citation in a footnote to section 9-104 does not advance Anderson's claim, as it refers only to the wholly inapplicable subsection 9-104(a)(1). *In re WEB2B Payment Solutions*, 488 B.R. at 391 n.8. *In re WEB2B Payment Solutions* also provides no basis to support Anderson's claim that because the Selective Suit proceeds were transferred into the United Bank account by Waterland's attorneys, not by Claud or Joann Anderson, the funds were thereby stripped of any lien held by any creditor.

The Court therefore finds no basis to conclude that Joann Anderson, in her capacity as a secured creditor, had control of the United Bank account within the meaning of section 9-104 by virtue of her access to that account as an authorized signatory for Waterland, and it affirms the bankruptcy court's factual findings and legal conclusions on this point.

Anderson also argues that, pursuant to section 9-109(d)(8) of the UCC, as codified in the Commercial Law Article of the Maryland Code, Harbor Bank's interest in the Selective Suit proceeds was an unsecured one that could not trump Joann Anderson's interest. That provision states that "[a] transfer of an interest in or an assignment of a claim under a policy of insurance" is exempt from the provisions of the UCC, but further provides that UCC provisions governing the creation of secured party rights and the priority of security interests do apply to "proceeds and priorities in proceeds." Md. Code Ann. Com. Law § 9-109(d)(8).

The cases interpreting the scope of section 9-109(d)(8) have tracked this statutory distinction between interests in insurance claims and interests in proceeds. In *In re Montreal, Main & Atlantic Railway, Ltd.*, 799 F.3d 1 (1st Cir. 2015), cited by Anderson, the United States Court of Appeals for the First Circuit specifically stated that "[b]y its terms, the [section 9-109(d)(8)] exclusion applies to the use of an *insurance policy* as original collateral or to any assignment of a claim under an insurance policy," including a "transfer of rights under an insurance policy," but made no reference to a transfer of insurance proceeds. *Id.* at 6 (emphasis added). At least one bankruptcy court has reached a similar conclusion. In *In re Holtslander*, 507 B.R. 779, 783 (Bankr. N.D.N.Y. 2014), the court explained, in the context of analyzing section 9-109(d)(8), that "[a] perfected security interest in the collateral will give the secured party a perfected security interest in the proceeds upon damage to or destruction of the collateral. Under Article 9, the secured party therefore does not have to be a named payee in order to have its security interest in the proceeds recognized." *Id.* at 783. The court thus found that a creditor with a perfected secured interest in the debtor's vehicle was entitled to the insurance proceeds paid out upon damage to or destruction of that vehicle. *Id.*

Here, the original collateral for Harbor Bank's security interest in the insurance proceeds obtained through the Selective Suit was not Waterland's insurance policy. It was Waterland's real property, in which Harbor Bank had an undisputed, properly secured, first-priority interest. *See* Amended Harbor Bank Deed at 3-6 (as to secured interest); Amended Intercreditor Agreement at 5 (as to priority). In apparent recognition of Harbor Bank's priority interest in Waterland's real property, the Amended Intercreditor Agreement granted Harbor Bank first priority over the Selective insurance proceeds. *See* Amended Intercreditor Agreement at 5 (defining "Insurance Proceeds" to include proceeds under Selective claim 21274371); *id.* at 9 (granting first priority over the Insurance Proceeds to Harbor Bank). By defining the interest as rights to "insurance proceeds paid," *id.* at 5, the Agreement squarely placed that interest within the ambit of § 9-109(d)(8)'s "proceeds and priorities in proceeds," which can be secured and prioritized under the UCC. Md. Code Ann. Com. Law § 9-109(d)(8). Because Harbor Bank's original collateral was not any insurance policy or claim, but rather Waterland's property, this case precisely tracks *In re Holtslander*, the reasoning of which the Court will apply here. This allegation of error is rejected.

Nor is the Court persuaded by Anderson's other arguments for error on the issue of injury. Anderson asserts that Harbor had no claim to the Selective Suit proceeds because the Selective policy did not list Harbor Bank as a loss payee. Harbor Bank's claim, however, is based not on its status as express beneficiary under an insurance policy, but on its status as the holder of a first-priority secured interest in Waterland's real property and insurance proceeds. *See In re Holtslander*, 507 B.R. at 783.

Anderson also argues that because Waterland was not in default on the Harbor Bank loan at the time the proceeds were transferred to the United Bank account, "the insurance proceeds were not trust property" as defined in the Amended Harbor Bank Deed. Appellant Brief at 15. Beyond

the fact that a Harbor Bank representative testified that Waterland was actually in default, Anderson's argument is flawed because he appears to confuse the concept of trust property with Harbor Bank's right to foreclose on that property, a right that would be triggered by Waterland's default. Under the Amended Harbor Bank Deed, however, Trust Property is expressly defined to include insurance proceeds for policies covering the Property. Amended Harbor Bank Deed at 6. Nor is the definition of Trust Property in any way limited or made contingent on a declaration of default. *See id.* at 4-6 (defining Trust Property). The Court therefore rejects this argument and concludes that the bankruptcy court correctly determined that Harbor Bank sustained an injury from the transfer of the Selective Suit proceeds to the United Bank account.

### III.    **Willful and Malicious**

Anderson also asserts that the bankruptcy court erred in finding that the injury he caused was "willful and malicious" under 11 U.S.C. § 523(a)(6). To the extent that Anderson asserts that his actions were neither willful nor malicious because Harbor Bank had no entitlement to the insurance proceeds, the Court rejects that argument because, as discussed above, Harbor Bank was entitled to the insurance proceeds.

The Court is further satisfied that the bankruptcy court correctly found that the injury to Harbor Bank was "willful and malicious." In reaching that conclusion, the bankruptcy court found, as a matter of fact, that Claud Anderson was aware that the Selective Suit proceeds were being transferred to the United Bank account, not to Harbor Bank; that it was highly unlikely that he was unaware at the time of the transfer that his wife, Joann Anderson, was planning to effect the Anderson Transfer; and that after Joann Anderson effected that transfer, Claud Anderson repeatedly failed to inform Harbor Bank either of the Selective settlement or of the existence of the settlement proceeds. On this last point, the bankruptcy court rejected Claud Anderson's

proffered explanation of his silence as something he believed to be required by confidentiality provisions referenced by a United States Magistrate Judge who did not actually conduct the mediation, which was conducted by a private mediator. This Court finds no clear error in these factual determinations.

Based on these findings of fact, the Court concludes, upon its own review, that the willful and malicious requirement of § 523(a)(6) was satisfied by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991) (holding that the standard of proof for dischargeability exceptions under § 523(a) is preponderance of the evidence). A willful and malicious injury requires "a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau*, 523 U.S. at 61. To meet this standard, the debtor must have acted "with substantial certainty that harm would result" or with "a subjective motive to cause harm." *In re Parks*, 91 F. App'x at 819 (quoting *In re Miller*, 156 F.3d at 603). Where Claud Anderson directed that the Selective Suit proceeds be transferred into the United Bank account, understood that Joann Anderson would remove those funds for herself, and deliberately kept information about the Selective Suit settlement away from Harbor Bank following the transfer, the facts support the conclusion that he acted with substantial certainty that his efforts would leave Harbor Bank with none of those settlement proceeds. The Court therefore concludes that Anderson's effort to deprive a first-priority creditor of its rightful monies was independently wrong and tortious, such that § 523(a)(6)'s "willful and malicious injury" requirement has been satisfied. *Webb v. Isaacson (In re Isaacson)*, 478 B.R. 763, 781 (Bankr. E.D. Va. 2012); *Alessi*, 405 B.R. at 68.

## IV.    *Res Judicata*

Finally, after including a series of other sections in his brief that are completely irrelevant to this case and acknowledging that they were "extracted from filings in Dorchester County Court," Appellant Brief at 11 n.1, Anderson argues that many of Harbor Bank's claims are barred by the doctrine of *res judicata* as a result of that prior case. The case in the Circuit Court for Dorchester County, Maryland, *Harbor Bank v. Kramon & Graham*, No. C-15-22885 (Md. Cir. Ct. Dorchester Cty. 2015), was a state-law action filed by Harbor Bank against Waterland and Kramon & Graham, Waterland's attorneys in the Selective Suit, alleging claims for conversion, conspiracy, and tortious interference with contractual relations. The court granted Kramon & Graham's Motion to Dismiss in that case, and the Court of Special Appeals in Maryland affirmed that ruling.

Under the doctrine of *res judicata*, a final judgment on the merits in an earlier decision precludes the parties from relitigating claims that were raised or could have been raised during that action. *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004). This doctrine applies when there is: (1) a final judgment on the merits in a prior lawsuit; (2) an identity of cause of action in both the earlier and later suits; and (3) an identity of parties or their privies in the two suits. *Id.* at 354–55. Neither the second nor third requirement is satisfied here. As to the second requirement, because federal district courts have exclusive jurisdiction over bankruptcy cases, *see* 28 U.S.C. § 1334(a), Harbor Bank's bankruptcy claims could not have been raised in the Dorchester County action. As to the third requirement, the final judgment referenced by Anderson resolves only Harbor Bank's claims as to Kramon & Graham, which is not a party to the bankruptcy action, so there is no identity of parties. The Court rejects *res judicata* as a basis for error.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's Order that Anderson's debt to Harbor Bank is nondischargeable under 11 U.S.C. § 523(a)(6) is AFFIRMED. The Appeal is DISMISSED. A separate Order shall issue.

Date: March 15, 2019

THEODORE D. CHUANG
United States District Judge